UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YOMAIRA Y.,

                           Plaintiff,                                      20-CV-1728Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on October 17, 2016, alleging disability beginning October 17, 2015, at the age of 29, due to anxiety and depression. Dkt. #6, pp.103-104.

On September 4, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Peter Manzi, at an administrative hearing before Administrative Law Judge ("ALJ"), Brian Kane. Dkt. #6, pp.77-101. Plaintiff testified that she lives with her four children, ages 9, 7, 6 and 4. Dkt. #6, p.86. She went

through school to the tenth grade and does not have her GED. Dkt. #6, p.52. She complained of pain in her knees and arm, explaining that she cannot sit or stand for more than 20-30 minutes at a time. Dkt. #6, pp.93-94. She has difficulty with her grip on her left hand because she did a lot of fast paced hand work jobs. Dkt. #9, p.97. She is planning to return to physical and mental health therapy now that her children have returned to school. Dkt. #6, pp.98 & 100.

The VE classified plaintiff's past work as a baby sitter, which is a semi-skilled, medium exertion position; hostess, which is a skilled, light exertion position; hotel clerk, which is a semi-skilled, light exertion position; and hand packager, which is an unskilled, medium exertion position. Dkt. 6, p.88. When asked to assume an individual with plaintiff's age, education and past work experience who could lift 20 pounds, stand for 2 hours, sit with a sit/stand option for 6 hours without climbing, balancing, kneeling or crawling, with the capacity to make simple decisions but not to work in a fast paced environment or to interact with the public, the VE testified that plaintiff could not perform her past work, but could work as an order clerk or addresser, each of which were unskilled, sedentary positions. Dkt. #6, pp.88-89. The VE testified that plaintiff would be precluded from substantial gainful employment if she was off task 15% or more of a workday or if she was absent 4 or more days of work per month. Dkt. #6, p.92.

The ALJ rendered a decision that plaintiff was not disabled on September 24, 2019. Dkt. #6, pp.22-33. The Appeals Council denied review on September

29, 2020. Dkt. #6, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on November 25, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is

not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of October 17, 2016; (2) plaintiff's bilateral degenerative joint disease, PTSD, bipolar disorder, anxiety, depression and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[1] with the following

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do

limitations: stand/walk for 2 hours and sit for 6 hours, with a sit/stand option every 15-30 minutes in an 8-hour workday performing no more than simple tasks, with simple decisions and no fast pace production, climbing, crawling, balancing or kneeling; and (5) plaintiff had no past relevant work, but was capable of working as an order clerk, addresser and surveillance system monitor, each of which were unskilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.22-33.

Plaintiff argues that, having given only partial weight to Dr. Ransom's consulting psychiatric evaluation and only limited weight to one opinion from LCSW Loree, while ignoring other opinions from LCSW Loree, the ALJ crafted the mental RFC outside of any psychiatric opinion evidence and therefore, the ALJ's mental RFC was not supported by substantial evidence. Dkt. #8-1, pp.10-12. Plaintiff also argues that the ALJ failed to properly apply the treating physician rule to Dr. Morse. Dkt. #8-1, pp.12-17. Specifically, plaintiff argues that the ALJ gave weight to Dr. Morse's initial opinion, but gave only partial weight to Dr. Morse's subsequent opinion, even though Dr. Morse had been treating plaintiff for a longer period of time when the subsequent opinion was rendered. Dkt. #8-1, pp.12-13. Plaintiff also argues that the ALJ erred in determining that Dr. Toor's opinion was vague without obtaining clarification as to the degree of limitation Dr. Toor found for standing and walking. Dkt. #8-1, p.16.

---

substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1527(b).

The Commissioner responds that although LCSW Loree is not an acceptable medical source, the ALJ's determination was not incongruent with LCSW Loree's assessment. Dkt. #9-1, pp.5-8. With respect to Dr. Morse, the Commissioner argues that the ALJ appropriately exercised his discretion in assessing Dr. Morse's opinon. Dkt. #9-1, pp.11-12. The Commissioner argues that the ALJ's RFC determination is well-supported by the record and that Dr. Toor's opinion was not inconsistent with the ALJ's determination that plaintiff was capable of performing light work. Dkt. #9-1, pp.13-15.

Although the regulations relating to evaluation of medical evidence for disability claims have been amended to, *inter alia*, eliminate the treating physician rule, plaintiff's application for disability was filed on October 17, 2016, which is prior to the March 27, 2017 effective date of the amendments. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed.Reg.5844-01, at *5844 (Jan. 18, 2017). Thus, where a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003)*; White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), *quoting* 20 C.F.R. § 404.1527(c)(2).

The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and

-6-

extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). Thus, the opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability).

Mental RFC

Christine Ransom, Ph.D., completed a consultative psychiatric examination of plaintiff on February 21, 2017. Dkt. #6, p.565. Plaintiff reported psychiatric hospitalization in June of 2016 for one week with continuing outpatient treatment. Dkt. #6, p.565. Plaintiff reported that her medication for depression and anxiety was effective and that she was not currently experiencing signs and symptoms of depression and anxiety and that when she did experience such symptoms, they were mild and occasional and did not interfere with her ability to function on a daily basis. Dkt. #6, p.566. She reported working as a lunchroom cleaner through the Monroe County Department of Social Service for the past three weeks, but noted that she was

only able to work 10 hours because of leg pain. Dkt. #6, p. 565. Dr. Ransom observed plaintiff to have appropriate hygiene and grooming, fluent and intelligible speech with adequate expressive and receptive language skills, coherent and goal directed thought processes, with no evidence of hallucinations, delusions or paranoia in the evaluation setting; full range of affect appropriate to speech and thought content; intact attention and concentration; intact recent and remote memory; and low average range of intellectual functioning. Dkt. #6, p.567. Dr. Ransom opined that plaintiff would

> show no evidence of limitation understanding; remembering and applying simple directions and instructions; understanding, remembering and applying complex directions; using reason and judgment to make work related decisions; interact adequately with supervisors, co-workers and the public; sustaining concentration and performing tasks at a consistent pace; sustaining an ordinary routine and regular attendance at work; regulate emotions, control behavior and well-being; maintain hygiene and appropriate attire; be aware of normal hazards and take appropriate precautions.
>
> The results of the evaluation are consistent with psychiatric conditions which are currently in remission with treatment.

Dkt. #6, p.567.

Kay Loree, LCSW completed a Psychological Assessment for Determination of Employability for the Monroe County Department of Human Services on October 25, 2016. LCSW Loree indicated that plaintiff's mental status was within normal limits with exception of dealing with domestic violence triggers, which creates anxiety and panic for patient when negative interactions occur with ex abuser, for example, in court. Dkt. #6, p.304. LCSW Loree indicated that plaintiff was moderately limited in her ability to follow, understand and remember simple instructions and

-8-

directions; ability to maintain attention and concentration for rote tasks; and ability to regularly adhere to a routine and maintain a schedule. Dkt. #6, p.805.

On February 3, 2017, LCSW Loree reported that plaintiff had graduated from mental health court and her mood was stable. Dkt. #6, p.793. However, she reported that plaintiff would be very limited in her ability to follow, understand and remember simple instructions and directions and maintain attention and concentration for rote tasks, and moderately limited in her ability to perform simple and complex tasks independently, regularly adhere to a routine and maintain a schedule, and perform low stress and simple tasks. Dkt. #6, p.794.

On April 17, 2017, LCSW Loree sent a letter to Monroe County Department of Human Services regarding plaintiff's work assignment, noting that since she began participating in the work program, plaintiff "has recently started experiencing issues that have exacerbated her mental health issues" and that she would not be able to participate in the work program until she was no longer symptomatic. Dkt. #6, p.800.

On November 21, 2017, LCSW completed a Physical Assessment for Determination of Employability for the Monroe County Department of Human Services noting that plaintiff was not taking any medication and that her mood was stable. Dkt. .#6, p.793. LCSW Loree indicated that plaintiff would be very limited in her ability to follow, understand and remember simple instructions and directions and maintain attention and concentration for rote tasks, and moderately limited in her ability to

perform simple and complex tasks independently, regularly adhere to a routine and maintain a schedule, and perform low stress and simple tasks. Dkt. #6, p.794.

The ALJ afforded Dr. Ransom's opinion only partial weight because the overall records demonstrated some limitations in plaintiff's functioning. Dkt. #6, p.30. The ALJ acknowledged LCSW Loree's assessment from November 21, 2017, but determined that the limitations noted were "not supported by the record, as the [plaintiff's] mental status exams were mostly normal throughout her record." Dkt. #6, p.30. Accordingly, the ALJ afforded LCSW Loree's opinion very limited weight. Dkt. #6, p.30.

As a social worker, LCSW Loree's opinions are not entitled to the same deference as required for an acceptable medical source. *See Genier*, 298 Fed. App'x 105, 108 (2d Cir. 2008) ("while the ALJ is certainly free to consider the opinions of . . . "other sources," in making his overall assessment of a [plainitff's] impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."). In the instant case, the ALJ appropriately considered LCSW Loree's most recent and most restrictive opinion, along with mental status evaluations contained within the medical record and plaintiff's activities of daily living, to reach a mental RFC that limited plaintiff to simple work. *See Robin P. v. Comm'r of Soc. Sec'y*, 2022 WL 593612, at *10 (N.D.N.Y. Feb. 28, 2022) (ALJ's assessment of plaintiff's mental limitations supported by substantial evidence where ALJ "cited the contrary evidence, but also pointed towards treatment records, [p]laintiff's reports of her own

daily activities, and expert opinion that supported a finding of fewer limitations than [p]laintiff claimed.").

Physical RFC

Harbinger Toor, M.D. completed an internal medicine consultative examination of plaintiff on April 19, 2017. Dkt. #6, p.30. Plaintiff reported an injury to her left knee in 2010 which required surgery and reported that she experienced difficulty standing, walking, lifting and carrying, as well as with her balance. Dkt. #6, p.592. She also reported that it was difficult to sit for a long time. Dkt. #6, p.592. Dr. Toor observed an abnormal gait, with a slight limp toward the left. Dkt. #6, p.593. Plaintiff declined to perform heel/toe walk and performed a squat 20% of full. Dkt. #6, p.593. Dr. Toor observed that plaintiff experienced difficulty getting on and off of the exam table and getting out of a chair. Dkt. #6, p.593. Upon examination, Dr. Toor noted

> Lumbar spine shows forward flexion 50 degrees, extension 0 degrees, lateral flexion full bilaterally, and rotary movement full bilaterally. SLR negative, both sitting and supine, bilaterally. Full ROM of shoulders, elbow, forearms, and wrists bilaterally. Full ROM of hips bilaterally. Full ROM of left knee, with slight tenderness in the left knee. Full ROM of right knee. Right ankle full ROM. Left ankle plantar flexion 10 degrees and dorsiflexion 5 degrees with tenderness and slight swelling in the left ankle/left foot.

Dkt. #6, p.594. Dr. Toor observed intact hand and finger dexterity and 5/5 bilateral grip strength. Dkt. #6, p.594. Dr. Toor opined that plaintiff had a moderate to marked limitation standing, walking, lifting, and carrying and that pain interfered with her balance. Dkt. #6, p.595. The ALJ determined that Dr. Toor's opinion was "vague but shows the [plaintiff] would be able to perform sedentary to light exertional tasks and is

accorded some weight, as the doctor was able to examine the [plaintiff's] functioning. Dkt. #6, p.31.

On November 29, 2018, Diane Morse, M.D., completed a Physical Assessment for Determination of Employability for the Monroe County Department of Human Services noting antalgic gait, heel & toe walking and squat, as well as tender knees. Dkt. #6, p.816. Dr. Morse opined that plaintiff was limited to 1-2 hours walking, standing, pushing, pulling, bending and carrying. Dkt. #6, p.817. Dr. Morse attached her treatment notes indicating that plaintiff reported

> pain when she stands and puts weight on her knees/legs. Patient has pain when she sleeps. Patient cannot go up or down stairs. Patient states pain is 7 out of ten. Patient takes Ibuprofen for pain, which provides minimal relief. Patient cannot tolerate prescription pain medication or narcotics. Patient alternates ice packs and heat packs which provides minimal relief. Patient has never received cortisone injections. The pain interferes with her daily activities. Patient has to lift her legs off the bed to get up in the morning. Patient does not work outside the home. Patient has four young children.

Dkt. #6, p.764. Upon examination, Dr. Morse noted pain on palpation of patellar joint on bilateral knees and pain on flexion and extension of bilateral lower extremities. Dkt. #6, p.765. Plaintiff received bilateral knee cortisone injections and was prescribed physical therapy. Dkt. #6, p.768. She was also prescribed a cane to avoid limping. Dkt. #6, p.768.

On May 6, 2019, Dr. Morse completed a Physical Treating Medical Source Statement indicating treatment once a month since November 12, 2018. Dr. Morse

diagnosed plaintiff with knee pain, anxiety, depression, asthma, and carpal tunnel syndrome on the left. Dkt. #6, p.759. Dr. Morse indicated that plaintiff experienced chronic knee pain, worse with activity and recommended physical therapy as well as decreased walking/standing for treatment. Dkt. #6, p.759. Dr. Morse indicated that plaintiff could sit and stand/walk for less than 2 hours in an 8-hour day and could sit for 15 minutes at a time before needing to stand for 10-15 minutes. Dkt. #6, pp.760-761. Dr. Morse noted that plaintiff required use of a cane. Dkt. #6, p.761. She also indicated that plaintiff would require a 10 minute break every 15 minutes. Dkt. #6, p.761. Dr. Morse indicated that plaintiff could occasionally lift less than 10 pounds but never lift more than 10 pounds. Dkt. #6, p.761. Dr. Morse further indicated that plaintiff could rarely twist and never bend, squat or climb ladders or stairs. Dkt. #6, p.762. Dr. Morse stated that plaintiff could use her right hand, fingers and arm to grasp, turn and twist objects, for reaching, and for fine finger manipulations 80% of an 8-hour day, but only 10% on the left side. Dkt. #6, p.762. Dr. Morse opined that plaintiff would be absent more than four days per month. Dkt. #6, p.762. Dr. Morse identified depression, anxiety and bipolar as affecting plaintiff's physical condition, noted that plaintiff needs better control of her mental health symptoms. Dkt. #6, p.760. Dr. Morse indicated that plaintiff would be incapable of even "low stress" jobs. Dkt. #6, p.760.

The ALJ determined that Dr. Morse's initial opinion "was consistent with the record and accorded weight," but determined that the "very severe limitations in [plainitff's] functioning" within the later opinion "are not supported by the actual record." Dkt. #6, p.29. For example, the ALJ noted that there was "no mention of carpal tunnel"

syndrome in the medical record and that plaintiff's

> strength was normal, except her knee pain, which is consistent with the 2 hour standing/walking limitation and the postural limitations, but there is nothing to suggest the [plaintiff] could not lift up to 20 pounds. Furthermore, the [plaintiff's] mental status exams were normal, and her mental condition improved.

Dkt. #6, p.30. As a result, the ALJ afforded the latter opinion only partial weight. Dkt. #6, p.30. As the ALJ provided sufficient explanation for his assessment of the various medical opinions within the record, the Court finds that his RFC determination is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**September 30, 2022**

                                                           s/ H. Kenneth Schroeder, Jr.
                                                           **H. KENNETH SCHROEDER, JR.**
                                                           **United States Magistrate Judge**